Castro v Hatim (2019 NY Slip Op 05639)





Castro v Hatim


2019 NY Slip Op 05639


Decided on July 16, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 16, 2019

Renwick, J.P., Richter, Tom, Kahn, Moulton, JJ.


8520 303415/14

[*1]Daisy Castro, Plaintiff-Appellant,
v
Fazil Hatim, et al., Defendants-Respondents.


Sacco & Fillas, LLP, Astoria (Nazareth Markarian of counsel), for appellant.
Molod Spitz & DeSantis, P.C., New York (Marcy Sonneborn of counsel), for respondents.



Order, Supreme Court, Bronx County (Julia I. Rodriguez, J.), entered on or about June 26, 2017, which, in this action for personal injuries sustained in a motor vehicle accident, granted defendants' motion for summary judgment dismissing the complaint, affirmed, without costs.
The photographic evidence shows that plaintiff's SUV struck the rear of defendants' tractor-trailer as plaintiff was attempting to merge into defendants' truck's lane of traffic. Thus, plaintiff violated her "duty not to enter a lane of moving traffic until it was safe to do so" (Davis v Turner, 132 AD3d 603, 603 [1st Dept 2015]; see Vehicle and Traffic Law § 1128[a]; Steigelman v Transervice Lease Corp., 145 AD3d 439 [1st Dept 2016]), "and [her] failure to heed this duty constitutes negligence per se" (Sanchez v Oxcin, 157 AD3d 561, 564 [1st Dept 2018]).
During her testimony, plaintiff acknowledged that at the time of the accident she was attempting to cross six lanes of traffic on Bruckner Boulevard, and was moving from the fifth lane from the curb (lane five) into the fourth lane from the curb (lane four).
The testimony of the driver of defendants' truck was that defendants' truck was wholly within lane four proceeding straight at the moment of the collision. Plaintiff's testimony, however, was that shortly before the collision, she had observed, through her right side view mirror, defendants' truck and other vehicles approaching on her right while her SUV was standing still between lanes five and four as she was trying to enter lane four. She further testified that she saw the truck move from the third lane from the curb (lane three) into lane four and that, at the moment of the collision, the truck passed her SUV, hitting the front passenger side of her SUV with the rear driver side portion of the truck as she tried to enter lane four.
At the outset, it is completely implausible that plaintiff would maintain her vehicle at a standstill on Bruckner Boulevard, with the front passenger side of her vehicle projecting into lane four and the rear driver side of her SUV in lane five, in the midst of steadily moving traffic in both lanes, which plaintiff admits to having seen to her right. Moreover, even if plaintiff's testimony were treated as plausible, by her own account she could not have first ascertained that her movement from lane five to lane four could be made with safety, given the approaching traffic she observed in her right side view mirror in lane four as she was moving into that lane of traffic. Accordingly, plaintiff violated Vehicle and Traffic Law § 1128(a).
Although our dissenting colleague expresses disbelief at our finding that plaintiff maintained her vehicle at a standstill while straddling two lanes on Bruckner Boulevard at the time of the accident, that finding is derived directly from plaintiff's own testimony. When plaintiff was asked whether, at the time of the accident, her vehicle was "physically moving," she answered, "No." In response to the next question, whether she was "standing still[,]", she responded, "Yes." When asked which lane the accident occurred in, she responded that it happened between lanes five and four, while she was attempting to move from one lane to the other. Thus, a reading of plaintiff's testimony makes it obvious that this Court's findings are not based upon a misinterpretation of that testimony.
And although our dissenting colleague finds plaintiff's testimony to be plausible, it is refuted by the positions of the two vehicles as depicted in the photographs, which, as plaintiff has conceded, were taken immediately following the accident and after the truck had moved "not far" from the location of the impact before coming to a stop. The photographs depict the truck as wholly within lane four with its wheels aligned within the lane markers and plaintiff's SUV as positioned behind the truck, straddling lanes four and five with its damaged front passenger side aligned with the driver's side of the rear bumper of the truck. In order for the vehicles to be positioned in this manner, plaintiff's SUV would have to have been moving into lane four after the truck had already moved forward within that lane, nearly entirely passing plaintiff's vehicle. Thus, these photographs clearly demonstrate that the front passenger side of plaintiff's SUV struck the driver's side rear bumper of defendants' truck while plaintiff was moving her SUV into lane four, and that plaintiff moved her SUV into the truck's lane at a time when she could not do so with safety, namely, after the truck had already started to pass her SUV. By the foregoing, defendants have made out a prima facie showing of entitlement to summary judgment based upon plaintiff's violation of Vehicle and Traffic Law § 1128(a) (see Carthen v Sherman, 169 AD3d 416, 417 [1st Dept 2019]).
Furthermore, in summary judgment analysis, we must discount the plaintiff's testimony where the plaintiff has "relied solely on [her] own testimony, uncorroborated by any other witnesses or evidence," and her testimony belied "common sense" (Moorhouse v Standard, New York, 124 AD3d 1, 9 [1st Dept 2014], citing Loughlin v City of New York, 186 AD2d 176, 177 [2d Dept 1992], lv denied 81 NY2d 704 [1993]). As these circumstances are presented in this case, plaintiff's testimony was properly "disregarded as being without evidentiary value" (Loughlin, 186 AD2d at 177). Thus, plaintiff's testimony raised no triable issues of fact.
Neither plaintiff's testimony nor any other record evidence supports the scenario, posited by our dissenting colleague, that the accident occurred while both vehicles were simultaneously attempting to enter lane four from opposite directions. Rather, as previously stated, the record evidence clearly shows that the sole proximate cause of the accident was plaintiff's driving of her SUV into the rear of defendants' truck while attempting to change lanes at a time when defendant's truck was entirely within lane four, with its axles already past plaintiff's vehicle, when plaintiff moved the front of her vehicle into lane four, before allowing the large tanker truck to fully move past her own vehicle. Moreover, our dissenting colleague's inference that the two vehicles entered lane four simultaneously is contradicted by the evidence, including plaintiff's own testimony. Had both vehicles entered lane four at the same time, the point of contact would have been at the front of both of the vehicles, rather than "with the end of the truck," as plaintiff testified. Therefore, even had the truck also been changing lanes, as plaintiff contended, the entry of the two vehicles into lane four was not simultaneous: rather, plaintiff entered lane four without first ascertaining that it was safe for her to do so, and at a time when defendants' truck was proceeding past her, making it unquestionably unsafe for plaintiff to change lanes. Thus, defendants have not only made out a prima facie showing of entitlement to summary judgment without establishment of any triable issue of fact by plaintiff, but also have demonstrated their own freedom from comparative negligence (see Carthen v Sherman, 169 AD3d at 417).
Furthermore, although our dissenting colleague finds that the plausibility of the truck driver's description of the impact of the two vehicles as light is undermined by the fact that the SUV's right front headlight was broken and the SUV's front bumper was torn off by the impact, there is neither any expert testimony to this effect nor any evidentiary support for this view.
With respect to plaintiff's testimony that the oil tanker truck was moving faster than her vehicle, which the opposing writing credits, that testimony establishes as a matter of law that plaintiff should not have entered lane four at that time, as she could not have done so with safety (Davis v Turner, 132 AD3d at 603; see Vehicle and Traffic Law § 1128[a]). In any event, attempting to cross six lanes of traffic on what our dissenting colleague terms "one of the most hectic roadways in New York City" without due care is inherently risky and dangerous, and renders plaintiff solely liable.
All concur except Renwick, J.P. who dissents in a memorandum as follows:




RENWICK, J.P. (dissenting)


Plaintiff Daisy Castro commenced this action seeking damages for personal injuries sustained in a motor vehicle accident. The accident happened after plaintiff, driving a Toyota SUV, exited the Bruckner Expressway into Bruckner Boulevard, heading south. At that location, Bruckner Boulevard contains six lanes going in the same direction. Plaintiff planned to turn right at the next intersection, requiring her to merge across all six lanes of traffic. Defendant Faziz Hatim, a driver for defendant F & S Petroleum Corp., claims that plaintiff caused the accident by moving into his lane and striking the rear bumper of his oil tank truck. Plaintiff, however, claims that the rear bumper of defendants' oil tank truck struck the right side of her SUV's front bumper, when both the truck and the SUV attempted to move into the same lane.
Despite the conflicting accounts of the accident, Supreme Court granted defendants' motion for summary judgment dismissing the action for lack of liability. The majority now affirms upon a finding that plaintiff's testimony was "directly contradicted by the photographs" of the scene of the accident and thus must be "disregarded as being without evidentiary value." I respectfully dissent because, in my view, the question of whether the accident occurred as defendant described, or whether it occurred as plaintiff described, is a classic factual dispute (see Huerta—Saucedo v City Bronx Leasing Inc., 147 AD3d 695 [1st Dept 2017]; Beaubrun v Boltachev, 111 AD3d 494 [1st Dept 2013]). Additionally, there is a genuine dispute as to whether photographs, which do not depict the collision, irrefutably rebut plaintiff's version of events leading up to and including the point of collision, particularly where defendants have proffered no affidavit from an expert accident reconstructionist on this motion for summary judgment on liability. I would therefore reverse the grant of summary judgment to defendants.
The controlling principles are well established. On a motion for summary judgment, the movant must establish its prima facie entitlement to judgment as a matter of law by presenting competent evidence that demonstrates the absence of any material issue of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). If the movant fails to make this showing, the motion must be denied (Alvarez, 68 NY2d at 324; Winegrad, 64 NY2d at 853). Once the movant meets its burden, then the opposing party must produce evidentiary proof in admissible form sufficient to raise a triable issue of material fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). In deciding the motion, the court must draw all reasonable inferences in favor of the nonmoving party and deny summary judgment if there is any doubt as to the existence of a material issue of fact (id.).
Here, in support of their motion for summary judgment, defendants rely primarily upon photographs taken at the scene of the accident and the deposition testimony of defendant-driver Hatim. He testified that he was driving his oil tank truck on Bruckner Boulevard He was traveling in the middle lane with two lanes on his left and two lanes on his right. According to Hatim's version of the accident, at the time of contact, the oil tank truck was moving straight ahead and prior to impact he did not change lanes. The photographs depict the point, several feet from the accident, where defendant brought the truck to a stop. They show defendants' truck in lane four, but the truck is slightly angled to the left, with the rear of the truck closer to the dividing line between lanes four and three than the front of the truck. Plaintiff's SUV is angled to the right with the dividing line between lanes five and four under the middle of her vehicle. The impact damaged the SUV's right front headlight and swiped off part of its bumper.
Based upon defendant driver's version of the accident, both the majority and the dissent agree that defendants met their burden. Thus, the burden shifted to plaintiff to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact that precludes summary judgment and requires a trial (Alvarez v Prospect Hosp., 68 NY2d 320).
I depart from the majority in its conclusion that plaintiff failed to meet her burden. In opposition to defendants' motion, plaintiff relies primarily upon her own deposition testimony. As indicated, plaintiff testified that prior to the collision, she was trying to maneuver her SUV [*2]from lane six, on the far left of Bruckner Boulevard, into lane one, on the far right, as she was planning to make a right turn at the next intersection. Through the passenger side view mirror, plaintiff observed that defendants' oil tank truck was behind her, coming from lane three and moving faster than she. Plaintiff's SUV was in lane five. Plaintiff tried to stop and applied her breaks "little by little." Plaintiff then observed that the truck became "even" with the SUV. At that time, plaintiff's SUV was in lane five and defendants' oil tank truck was in lane three. Soon thereafter, the truck, entering lane four, passed by the SUV and the end of the oil tank truck "swiped" the side of plaintiff's SUV, taking off part of the front bumper of the SUV. Thus, plaintiff's testimony provides a clearly plausible version of the accident that directly contradicts defendant driver's version that his truck was always in lane four, even prior to the impact, raising triable issues of fact (see Huerta—Saucedo v City Bronx Leasing Inc., 147 AD3d 695; Beaubrun v Boltachev, 111 AD3d 494).
The majority's finding - that plaintiff's testimony was incredible and thus must be disregarded as being without evidentiary value - is based upon a strained interpretation of plaintiff's testimony and thus not persuasive. Indeed, I am perplexed by the majority's initial finding, which completely overlooks the realities of driving on heavily trafficked major New York City roadways, that "it is completely implausible that plaintiff would maintain her vehicle at a standstill on Bruckner Boulevard, with the front passenger side of her vehicle projecting into lane four and the rear driver side of her SUV in lane five, in the midst of steadily moving traffic in both lanes."
The majority misunderstands the dissent's position. I do not "express[] disbelief at [the majority's] finding that plaintiff maintained her vehicle at a standstill while straddling two lanes." I express dismay at the majority's finding that plaintiff's testimony was incredible because no careful car driver could momentarily "[remain] at a standstill while straddling two lanes [of traffic]." To find plaintiff's action as lacking exercise of due care and defying common sense is to clearly invade the province of the jury by assuming the testimony of the witness to be untrue.
This rendition of the accident is an obvious misinterpretation of plaintiff's testimony. The majority suggests that plaintiff recklessly stationed her SUV, immobile, straddled between lanes four and five, as if "waiting for Godot," as opposed to stopping in the momentary, quick, fluid manner usually involved in the changing of lanes. Instead, plaintiff testified that she entered lane six on Bruckner Boulevard about five miles an hour. She then applied the brakes "little by little" with the intent to make it all the way to lane one on the right side. Because plaintiff saw no vehicle traversing in lane five, she safely moved into that lane; plaintiff then came to a stop before attempting to move into lane four and observed that defendant's truck was traveling in lane three, closely even to her SUV in lane five. There is nothing reckless or incredible about such testimony. The majority cannot seriously equate plaintiff's testimony to something so contrary to experience and common sense as to be incredible as a matter of law.
To buttress its position that the accident could not possibly have happened but for plaintiff's sole negligence, the majority misconstrues plaintiff's testimony in another significant respect. The majority argues that "by her own account [plaintiff] could not have . . . ascertained that her movement from lane five to lane four could be made with safety." The majority reaches this conclusion based upon the alleged testimony of plaintiff that from the right-side view mirror of her SUV, she could see "approaching traffic" in lane four, "as she was moving into that lane of traffic." Plaintiff, however, testified that upon safely moving the SUV into lane five, she observed that defendant's truck was traveling in lane three, closely even to her SUV in lane five. At the time, she did not observe any vehicle traveling in lane four, contrary to the majority's findings. Under the circumstances, the conclusion the majority reaches necessarily relies upon unproven factual assumptions, as to the speed, distance, and volume of traffic.
Viewing plaintiff's testimony in the light most favorable to plaintiff and according her, as the nonmovant, the benefit of every reasonable inference (see Cohen v Hallmarks Cards, 45 NY2d 483), an inference could be made that defendant's truck and plaintiff's SUV were simultaneously attempting to move into lane four from opposite lanes. The foregoing inference in favor of plaintiff, while subject to contrary inferences, is supported by plaintiff's testimony. [*3]Clearly, the disputed facts regarding the speed, position, and location of the vehicles at the time of the impact raise triable issues of fact as to the parties' comparable fault in the happening of the accident.
Contrary to the majority's conclusions, the photographs do not unequivocally demonstrate plaintiff's version of the accident to be clearly and patently false. First, the condition of the SUV, as shown in the photographs, did not render plaintiff's version of the accident implausible and incredible. To the contrary, the damage to plaintiff's SUV is fully consistent with plaintiff's testimony that the oil tank truck, proceeding faster than she to reach lane four, swiped the front corner of plaintiff's SUV with its rear, breaking the SUV's right front light and ripping off the SUV's bumper on the right. In contrast, it is far less plausible that a partially detached bumper would result from a mild head-on collision, as defendant driver described it.
Second, the photographs fail to conclusively establish the position of the vehicles either immediately before or at the moment of impact. The majority relies heavily on plaintiff's testimony, on cross examination, that the photographs indicated the "post-accident location," as conclusive evidence that defendant was lawfully operating his vehicle within his own lane of traffic, and that plaintiff's vehicle entered his lane of traffic and collided with his truck. However, plaintiff testified that the photographs were "a fair and accurate representation of the location of the vehicles immediately following the accident," and not the position of the vehicles either immediately before or at the moment of impact, as the majority suggests. At best, the photographs show nothing more than where the oil tank truck chose to stop after the accident, as the truck is several feet away from the SUV and not in the position it was when it connected with the right front of plaintiff's SUV. Thus, contrary to the majority's conclusion, the photographic evidence does not conclusively establish that plaintiff's vehicle struck the rear of defendant's truck as she was merging into its lane of traffic. Nor does it establish that defendant did not switch from lane three to lane four prior to the accident. Instead, the photographic evidence raises a classic dispute as to the exact location of the vehicles at the time of the accident and the cause of the accident.
Although plaintiff's testimony might have inconsistencies, it did not, as the majority asserts, defy "common sense" as to how the accident occurred. Plaintiff's testimony was not riddled with inconsistencies. Nor did defendant's testimony make out plaintiff's testimony to be manifestly untrue or physically impossible. Viewing the evidence in the light most favorable to plaintiff and drawing all inferences in her favor, as the nonmovant (Cohen v Hallmark Cards, 45 NY2d 493 [1978]), plaintiff's testimony supports an inference that the accident happened as she described, when both vehicles, the oil tank truck moving faster, were simultaneously intending to enter lane four from opposite directions and that, under the circumstances, defendant driver contributed to the happening of the accident.
Ultimately, in finding that plaintiff's testimony must be "disregarded as being without evidentiary value," the majority overlooks the principle that it is the province of this Court to consider an accident in light of all surrounding circumstances. It is clear from her testimony that plaintiff based her account on an accident that happened very quickly. It is not to be assumed that a witness to an accident that happened in some fleeting moments would articulate and accurately observe all of the details with exactitude.
Indeed, contrary to the majority's suggestion, the rule of law in New York State does not require, as a prerequisite to recovery in a personal injury action, that the injured plaintiff establish every detail of a car accident consistent with all physical facts and common knowledge, particularly where significant physical facts relating to vehicle placement, speed, and distance are contrived based on a post-accident photograph, without benefit of an expert accident reconstructionist. Nor does it require interpreting facts in a way that eliminates the realities of driving on one of the most hectic roadways in New York City. Undoubtedly, where some details of a witness's account conflict with undisputed facts, the witness's entire account may be discredited by the trier of fact. However, on a summary judgment motion, it is not a sufficient ground for an appellate court to dismiss an action simply because the version of the accident as told by a plaintiff may be viewed by the majority as improbable. It is for the trier of fact to weigh [*4]and balance probabilities.
Negligence cases can "rarely be decided as a matter of law" because "even when the facts are conceded there is often a question as to whether the defendant or the plaintiff acted reasonably under the circumstances" (Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The descriptions of the accident given by plaintiff and defendant, herein, are at odds. Given the circumstances of this case, it is for the jury, as the trier of fact, to weigh, determine, and resolve issues of fact at trial, and not for this Court.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 16, 2019
CLERK